UNITED STATES, Appellee

v

MARVIN E. YOUNG, JR., Master Sergeant,
U. S. Air Force, Appellant

8 USCMA 695, 25 CMR 199

No. 9723

Decided February 14, 1958

*Captain Norman J. Nelson* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel Ellis L. Gottlieb.*

*Captain Lawrence J. Gross* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel James R. Thorn, Lieutenant Colonel Francis P. Murray,* and *Major Fred C. Vowell.*

Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The evidence shows that the accused deposited two checks in the "pot" in a poker game. The checks were not paid. He was charged with two violations of Article 134, Uniform Code of Military Justice, 10 USC § 934, in that he failed to maintain sufficient funds for payment of the checks on presentment.

For the reasons set out in our opinion in United States v Lenton, 8 USC MA 690, 25 CMR 194, decided this date, the decision of the board of review as to Charge IV and its specifications is reversed. The findings of guilty are set aside and Charge IV and its specifications are dismissed. The record of trial is returned to The Judge Advocate General of the Air Force for submission to the board of review for redetermination of the sentence upon the basis of the remaining findings of guilty.

Judge FERGUSON concurs.

LATIMER, Judge (dissenting):

I dissent.

This accused was found guilty of nine specifications alleging the making of false official statements with intent to deceive, two specifications of attempted larceny, two specifications of making and uttering checks and thereafter wrongfully and dishonorably failing to maintain sufficient funds on the drawee bank for payment upon presentment, six specifications of larceny, and five specifications of forging checks, all in contravention of punitive Articles of the Uniform Code of Military Justice. He was sentenced to a dishonorable discharge, total forfeitures, and confinement at hard labor for twenty years. The convening authority disapproved a number of the specifications and reduced the original period of confinement imposed by the court to five years. A board of review in the office of The Judge Advocate General of the Air Force affirmed the findings and sentence, and we granted review to determine the single issue of whether checks given in a poker game will sup-

port a conviction under Article 134 of the Uniform Code of Military Justice, 10 USC § 934.

This case is closely akin to United States v Walter, 8 USCMA 50, 23 CMR 274, in which a majority of the Court held that checks given under similar circumstances would not support a charge of larceny under Article 121 of the Code, 10 USC § 921. In that case, it was stated by my associates that they were not expressing an opinion on the applicability of Article 134, supra, to a fact situation involving gambling. They now answer that question in such a manner that they chisel away much of the long-established military rule that floating bogus checks and then dishonorably failing to make them good is discrediting to the Services. I would not let my abhorrence to gambling carry me that far away from reality. Perhaps under certain circumstances it is permissible to assert that there cannot be dishonor among thieves but that does not follow when the good name of the military Services is at stake. Civil principles of law should not be the garrote to extinguish what is left of the concept that an officer's word is his bond.

A citation of the many cases contrary to the present holding would avail me little for even defense counsel concedes his position is contrary to the military authorities, and in my opinion many civilian cases dealing with the criminal aspects of such transactions are in accord. Of course, I must concede that civilian courts generally deny a party the right to use court processes to recover on a gambling contract but that presents an estoppel theory which should not be applied against the Government.

I took the view in United States v Walter, supra, that, having obtained cash for the check, the accused there obtained money under false pretenses, for he represented that the check would be honored, well knowing he had no funds for that purpose. Under that theory, the person who was the defrauder had an obligation to return the fruits of his fraud. I use the same reasoning in this case to conclude the accused was obliged to make the civilian whole. When he dishonorably failed to do that, the public confidence in those who wear the uniform was affected adversely.

In the above cited case at page 56, I said this:

"We are an appellate court created to decide cases by the law and if we only apply long-recognized legal maxims, a fair and just result usually follows. Defense counsel concede that over the years, military law has consistently held that the issuance of worthless checks under similar circumstances is a military offense, and they cite sixteen cases to support that theory. That well-developed body of military law is overruled without being mentioned, apparently because it is believed moral requirements compel us to discourage gambling in the Service. Without debating what the effect of this case will be, I merely go on to say that we make unique law when we say we will not countenance the conviction of a thief because he stole from a gambler."

I now state we make bad law when we say we will not assess the damage to the Services by military personnel floating bad checks because, at all costs, we must not countenance gambling.

I would, therefore, affirm the decision of the board of review.