UNITED STATES, Appellee

v

EDMOND W. PETTINGILL, Sergeant Major, U. S. Army, Appellant

21 USCMA 409, 45 CMR 183

No. 24,721

May 19, 1972

Captain James L. Powers argued the cause for Appellant, Accused. With him on the brief were Colonel George J. McCartin, Jr., Lieutenant Colonel Joseph E. Donahue, and Captain John J. Lanoue.

Captain R. Craig Lawrence argued the cause for Appellee, United States. With him on the brief were Colonel David T. Bryant, Lieutenant

*Colonel Ronald M. Holdaway, Captain David E. Wilson, Captain Benjamin P. Fishburne, III,* and *Captain Richard L. Menson.*

## Opinion of the Court

QUINN, Judge:

Two issues are presented by this appeal. The first is whether the evidence is sufficient to support the accused's conviction by general court-martial of dishonorable failure to pay a debt; the second is whether the United States Army Court of Military Review correctly denied a petition for new trial alleging, in part, that the Government willfully suppressed material evidence favorable to the accused.

The incident, which began the chain of events that led to two charges against the accused, one of which was dismissed at trial for lack of evidence, arose in July 1968, on Okinawa. Captain Knarr, an Air Force officer, occupied a civilian house, with his family, in the Ojana Heights area, which he had purchased in May 1966 on arrival in Okinawa. It further appears that ownership of the house was separate from ownership of the land but carried with it a form of leasehold interest in the land. Sometime before July 1968, Captain Knarr was scheduled to return to the United States, with the departure date set for July 29. Accordingly, he put the house up for sale. "A few days" previous to that, "an Okinawan" from "the bank" appeared at the house and advised the captain that the premises "had a mortgage on it." The captain and his wife went to the office of Bei Ryu Housing Corporation and spoke to a Mr. Shinjo. Apparently the housing corporation was the developer and builder of the houses in the area. Mr. Shinjo confirmed that a mortgage lien for construction funds was on the premises, but "assured" the captain it would be removed.

In the first week of July, the accused initiated negotiations for purchase of the house. These resulted in an oral agreement of purchase of the house and certain property, such as an air conditioner, a refrigerator, and "items like that" for $7,000.00. However, because the accused thought "he could get a higher appraisal value if he had an $8,000 price on the bill of sale" and ancillary documents, Captain Knarr agreed to set out $8,000.00 as the purchase price. On July 17, they had prepared, and signed, the following documents: (1) A bill of sale for the premises, which recited a consideration of $8,000.00; (2) a promissory note for $7,000.00 with six per cent interest per annum "after 29 October 1968," but with another provision to the effect that the note was "[p]ayable in full on or before 29 October 1968"; (3) a mortgage on the premises to secure payment of the promissory note; and (4) a document described as a contract. The contract recited a consideration of $8,000.00, with $1,000.00 payable on July 17, 1968, and the balance in accordance with a note in the face amount of $7,000.00, bearing interest at the rate of six per cent per annum "upon the unpaid balance until paid. [sic] after 29 October 1968." According to the agreement, the seller retained title to the house until the entire consideration was paid, and the buyer had a right of possession from which he could be ousted upon "default in payment of any installment due." On repossession of the premises, the seller was authorized to sell the premises but was required to "apply any amount received against the amounts due or owing under this agreement."

We need not recount all the events that occurred after the execution of the purchase documents. Suffice it to note that Captain Knarr went to the United States, as scheduled, but returned to Okinawa in November 1968, to confer again with Mr. Shinjo about the mortgage lien, which had not been removed as promised. At this meeting, Shinjo informed the captain that there had been "USCAR intervention . . . and it was going to be at least until the first of January"

until the matter could be cleared. When Captain Knarr continued to insist on immediate action, Shinjo told him to return the next day; Captain Knarr did, and he received a "piece of paper in Okinawan or Japanese" which he gave to the accused.[1] On this visit, he filed a civil suit against the accused in the Naha District Court. While the case was pending, the criminal charges were lodged against the accused and referred to trial. At trial, Captain Knarr testified to his repeated, but unsuccessful, attempts to obtain payment of the note. Oppositely, substantial evidence was introduced by defense to indicate that the accused had paid the purchase price.

Whether the court members could properly believe Captain Knarr's testimony that he had not received payment on the promissory note and reject the defense evidence indicating payment by the accused, need not detain us. Neither need we consider the effect of the pendency of the civil suit instituted by Captain Knarr. See Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 213f(7), pages 28–77 and 28–78. Also, we need not decide whether, under military law or Okinawan law, a contract which specifically contemplates that one of its terms will be used to defraud third persons can be given legal effect in determining rights between the parties to the contract. Compare United States v Walter, 8 USCMA 50, 23 CMR 274 (1957); United States v Wallace, 15 USCMA 650, 36 CMR 148 (1966). Finally, we need not consider the effect of the failure to show by competent evidence that the existing lien against the house had been removed so as to satisfy the warranty of title contained in the contract of sale.

The record of trial does not indicate whether under Okinawan law the house is real or personal property. There is also no indication whether, under Okinawan law, the documents in issue operated as a conditional sale,

which is consistent with the retention of title provision of the basic contract, or whether it passed title, subject to a mortgage lien, which appears to be the interpretation accorded them by the Government.

A lien in the form of a mortgage to secure payment of the purchase price of either real or personal property may preclude the holder of the mortgage from bringing an independent suit to recover on the debt; in other words, on default of payment of a debt secured by a mortgage lien, the lienor may be required to resort first to the security, and only if the security produces insufficient proceeds to satisfy the debt, and authorized additions to it, can the lienor enforce the personal obligation of the debtor. This rule applies in a number of American jurisdictions as to both real property and personal property. 55 Am Jur 2d, Mortgages, §§ 536, 538; 15 Am Jur 2d, Chattel Mortgages, § 207. Since the property is located in Okinawa, we would suppose that the laws of Okinawa govern, particularly as there is no provision in the documents suggesting application of the law of another jurisdiction. Yet, there is no evidence of the law of Okinawa on the subject.

Judicial notice may be taken of the local law of a "possession" of the United States. Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 147. Assuming, without deciding, that a "possession" may be territory over which the United States has less than total sovereignty, at all times important to this case Japan retained "residual sovereignty" over Okinawa (United States v Vierra, 14 USCMA 48, 50, 33 CMR 260 (1963)) and local law was continued, with provision for change by the Government of the Ryukyu Islands. Executive Order 10713, June 5, 1957, 3 CFR (1954–1958 Compilation) 368, as amended by Executive Order 11010, March 19, 1962, 3 CFR (1959–1963 Compilation) 587; Civil Administration Proclamation No. 13, titled "Establishment of the Government of the Ryukyu Islands," February 29, 1952.

---

[1] A copy of the document and a translation were excluded from evidence.

Local laws are required to be filed with the Congress of the United States, but, these, we are informed, are in Japanese, without translation. In ▮▮▮▮▮ these circumstances, the local law is, in our opinion, more appropriately the law of a foreign jurisdiction than that of a possession of the United States. As to foreign law, the Manual provides that the party desiring that such "be–determined by the court should present . . . the material or source upon which he relies." A similar requirement is imposed in the Federal civilian courts. See– Rule 26.1, Federal Rules of Criminal Procedure; Rule 44.1, Federal Rules of Civil Procedure; Ruff v St. Paul Mercury Insurance Company, 393 F2d 500, 502 (CA 2d Cir) (1968). We conclude, therefore, that the deficiency of proof may not be supplied by judicial notice of the local law of Okinawa.

Manifestly, where the lienholder must look first to the security before he can proceed directly against the debtor, the debtor's personal obligation to pay is merely inchoate. In fact, it may turn out that the lienor becomes the debtor of his debtor. This results when disposition of the security realizes more than the debt, and authorized additions to it; in that event, the lienor is obligated to refund the surplus to the debtor. 15 Am Jur 2d, Chattel Mortgages, § 235; 55 Am Jur 2d, Mortgages, § 619. ▮▮▮▮▮ In the absence of clear evidence of Okinawan law as to the effect of the mortgage lien on the right of the lienor to enforce, immediately or directly, the personal obligation of the debtor, it cannot be said that the accused's failure, or even willful refusal to pay, was dishonorable or discredible conduct.[2] See United States v Kirksey, 6 USCMA 556, 20 CMR 272 (1955); United States v Lenton, 8 USCMA 690, 25 CMR 194 (1958).

Having concluded that the evidence is insufficient to support the findings of guilty, it is unnecessary to consider the second assignment of error. The decision of the United States Army Court of Military Review is reversed, and the findings of guilty and the sentence are set aside. The charge is ordered dismissed.

Chief Judge DARDEN and Judge DUNCAN concur.

---

[2] Our conclusion as to the deficiency of the evidence in this regard makes it unnecessary for us to consider whether willful refusal to pay a debt can ever be dishonorable or discreditable conduct to the prejudice of the Armed Forces when the debt is secured by a security, whose reasonable value, on its face, is substantially more than the unpaid amount of the debt, and all reasonable authorized additions to it. The evidence indicates the accused made substantial improvements in the house which materially increased its value.