See my concurring opinion in *United States v. Anderson,* 21 M.J. 670 (A.C.M.R.1985).

**UNITED STATES, Appellee,**

v.

**Private (E-1) Gregory L. LUSK, 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, United States Army, Appellant.**

**SPCM 18479.**

U.S. Army Court of Military Review.

24 Dec. 1985.

For Appellant: Colonel William G. Eckhardt, JAGC, Captain Paul J. Moriarty, JAGC, Captain William T. Wilson, JAGC (on brief).

For Appellee: Colonel James Kucera, JAGC, Lieutenant Colonel John T. Edwards, JAGC, Captain Andrew D. Stewart, JAGC, Captain Richard P. Laverdure, JAGC (on brief).

Before WOLD, FELDER, and NAUGHTON, Appellate Military Judges.

## OPINION OF THE COURT

WOLD, Senior Judge:

Appellant was convicted by the members of a special court martial, contrary to his pleas, of disobedience of a noncommissioned officer, larceny of $10.00, larceny of two grenade simulators, larceny of five smoke grenades, larceny of a CS (tear gas) grenade, possession of marijuana, and wrongful sale of government property. His sentence to a bad-conduct discharge, confinement at hard labor for six months and forfeiture of $280.00 pay per month for six months was approved by the convening authority.

Appellant has asserted several errors. Those which we do not discuss we have determined to be without merit or harmless. We will discuss five issues. The first two involve a search of appellant's barracks room and the introduction of the results of a field test to identify marijuana. Appellant also challenges the sufficiency of the evidence to prove the offense of larceny by trick, contends that the larceny and sale of government property are multiplicious for findings purposes, and contends that the military judge erred by refusing to instruct on mistake of fact in regard to the charge of willful disobedience of an order. We resolve all the assigned errors in favor of the government and affirm.

### I

### THE SEARCH AUTHORIZATION

Appellant's convictions for possession of marijuana and larceny of two grenade simulators are predicated upon evidence discovered during a search of his barracks room. The search was conducted by the battalion staff duty officer after he detected the odor of CS gas emanating from appellant's room. The duty officer report-

ed his observations to the company commander by telephone and received verbal authorization to search appellant's room. During the ensuing search, the duty officer located two grenade simulators hidden above the ceiling tiles and found a smoking pipe either in or on top of appellant's wall locker.

At trial, appellant moved to suppress all evidence seized during the search of his room on the ground that the company commander had authorized a general search. The object or objects of the search the company commander had intended to authorize, the object or objects the duty officer had understood he was authorized to search for, and the precise terms of the search authorization were all disputed. The controversy centered on whether the search, as authorized and as understood, was limited in its object to CS only or to CS and "any other contraband." (For example, there was evidence that the company commander had told the duty officer to "search the room for CS and ... any other contraband you find, go ahead and take custody of it." Other versions were offered as well.) The trial judge found that the company commander had limited his authorization to a search for CS only, and had merely "given precatory instructions to the officer conducting the search to incident[al]ly seize any other contraband that he found while he was searching for the [CS]." The trial judge made no findings regarding the duty officer's understanding as to the objects for which he was authorized to search. The duty officer's testimony made it clear, however, that he understood that he was authorized "to look for anything that might possibly be illegal in the room ... regardless of whether or not the [CS] might be found in such an area." The trial judge denied the suppression motion and admitted the evidence.

The Fourth Amendment requires that search warrants "particularly describ[e] the place to be searched, and the persons or things to be seized." This is a constitutional proscription against general searches, which "prevents the seizure of one thing under a warrant describing another." *Walter v. United States*, 447 U.S. 649, 656 n.7, 100 S.Ct. 2395, 2401 n.7, 65 L.Ed.2d 410 (1980) (citation omitted). As a result, "[e]xploratory searches for evidence of crime have long been condemned ...", *United States v. Hartsook*, 35 C.M.R. 263, 267 (C.M.A.1965), and their products excluded from evidence.

To begin with, we agree with the parties that a search which was limited to CS only (both as authorized and as conducted) was sufficiently particularized under the circumstances, but that a search for CS and "any other contraband" was not. Appellant renews his contention that the evidence was illegally obtained because the authorization was insufficiently particularized. Appellant challenges the trial judge's finding that the company commander had limited his authorization to a search for CS only. Appellant argues that the commander's authorization to search for the CS grenade was subsumed by a general directive to search for "any other contraband you find," and that this rendered the entire search violative of the Fourth Amendment. The government responds that even if the company commander did authorize a search for "any other contraband", that improper portion of the search authorization may be severed without condemning the whole.[1]

Military Rule of Evidence 311 (Evidence Obtained From Unlawful Searches and Seizures), Mil.R.Evid. 315 (Probable Cause Searches), and the Drafters' Analyses of those rules are neutral on the issue of

---

1. The government relies on two alternative arguments. The first argument begins with the contention that the trial judge was correct in his findings. The government then argues that if the company commander did limit his authorization to a search for CS only, then the smoking pipe and the two grenade simulators were seized during the course of a search for proper-

ly described evidence. (This, of course, assumes that the search was understood and executed as authorized.) The dispute over the validity of the judge's finding will not detain us, since we resolve the issue of the admissibility of the evidence based on the government's severance theory.

severability, addressing it neither explicitly nor implicitly. Also, the remedy of severance or partial suppression has not yet been addressed in any military cases. Therefore, we turn to our secondary sources of law. Mil.R.Evid. 101(b).

There is a growing willingness among United States district courts and courts of appeal to sever the invalid portions of a search warrant and limit the application of the exclusionary rule to items seized pursuant to the invalid portions. This is part of a development which also involves state courts, whose opinions are therefore useful in determining "the rules of evidence generally recognized in the trial of cases in the United States district courts." Mil.R.Evid. 101(b)(1). Most of the cases involve search warrants which lack particularity as to some of the items to be seized. See Annot., 69 A.L.R.Fed. 525 (1984). For instance, in *Aday v. Superior Court*, 55 Cal.2d 789, 13 Cal.Rptr. 415, 362 P.2d 47 (1961), the search warrant described two obscene books by name, but referred to other items in impermissibly general terms. The court determined that the warrant, though defective in part, was severable and ruled that the search for and seizure of the two named books should not be rendered illegal by the defects concerning the other items. See also 2 W. LaFave, *Search and Seizure*, § 4.6(f) at 111–12 (1978)[hereinafter LaFave]. Among the United States courts of appeal, the First, Third, Fourth, Fifth, Sixth and Ninth Circuits have adopted the remedy of partial suppression. See cases cited in *United States v. Apker*, 705 F.2d 293, 310 (8th Cir.1983) (Bright, J., concurring in part, dissenting in part), *cert. denied*, 465 U.S. 1005, 104 S.Ct. 996, 80 L.Ed.2d 538 (1984); *Sovereign News Co. v. United States*, 690 F.2d 569 (6th Cir.1982), *cert. denied*, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983); *United States v. Jacob*, 657 F.2d 49 (4th Cir.1981), *cert. denied*, 455 U.S. 942, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982); Annot., 69 A.L.R.Fed. 527–532 (1984).

■ We hold that it is unnecessary to suppress evidence seized pursuant to the valid portion of a search authorization merely because the authorization contains other portions which are invalid. "[I]t would be harsh medicine indeed if a warrant which was issued on probable cause and which did particularly describe certain items were to be invalidated in toto merely because the affiant and magistrate erred in seeking and permitting a search for other items as well." *United States v. Riggs*, 690 F.2d 298, 300 (1st Cir.1982) (quoting 2 LaFave, § 4.6(f)).

In order to qualify as a particularized search, a search must be limited in two ways: to a particular area and to a particular object or objects. U.S.Const. amend. IV. Thus, in a situation where an authorization permits both a general and a particularized search, the acid test for proper application of the principle of severability is whether the item in question was found during a search for a particularly described object, conducted in a particularly described area. The mere fact that the items found were particularly described, for instance, does not necessarily mean that they were found during a search for those items or that the search was conducted in a particularly described area. It is the nature of the search, not just the identity of the item seized, which controls.

In this case, the search was conducted in a particularly described area and the commander authorized a search for CS grenades with sufficient particularity. The evidence of record shows, and we find as fact that the duty officer discovered the marijuana and the grenade simulators during the course of a search for the CS grenades, rather than during a search for any other contraband. Applying the severability doctrine, we hold that the evidence was properly admitted.

## II

### THE FIELD TEST

■ As noted above, a smoking pipe was seized on or inside appellant's wall locker during the search of his room. This pipe was transferred to a military police investi-

gator, Sergeant Smith, who tested the residue within the pipe for the presence of marijuana by conducting a Becton-Dickinson Duquenois Reagent test. Scraping residue from the bowl of the pipe into the test kit, Sergeant Smith observed changes of color in the chemicals in the kit indicating the presence of marijuana. Sergeant Smith testified that he had been a military police investigator for eighteen months and had conducted the Becton-Dickinson field test approximately 85 to 100 times. In the cases where subsequent laboratory analysis was conducted, the test had never been contradicted. During cross-examination, Sergeant Smith admitted his unfamiliarity with the component chemicals of the test.

The trial defense counsel objected to the introduction of the field test result on the ground that there was no evidence to establish the reliability of the test. The trial judge ruled that the test was generally accepted in the scientific community as being based upon sound scientific principles and admitted the investigator's testimony describing the test results. Before us, appellant argues that the Becton-Dickinson field test has not gained general scientific acceptance and should therefore have been excluded, citing *Frye v. United States*, 293 Fed. 1013 (D.C.Cir.1923).

This assignment of error draws into question the continued validity of *Frye* under the Military Rules of Evidence. Although we believe that the adoption of the Military Rules of Evidence has cast serious doubt on *Frye*,[2] we need not decide that issue here. We are satisfied that under *Frye* the Becton-Dickinson Duquenois Reagent test is "sufficiently well established to merit general acceptance in the particular field." *See United States v. Sanchez*, 50 C.M.R. 450, 454 (A.F.C.M.R. 1975).

## III

## SUFFICIENCY OF EVIDENCE OF LARCENY BY TRICK

Appellant contends that there is insufficient evidence to support his conviction of larceny by trick from a Private Smalls. The government was required to prove that appellant obtained $10.00 by representing some pills as a stimulant, that the pills were not a stimulant, and that appellant knew they were not. Private Smalls testified that appellant and one Waggoner offered to sell him some pills which would "keep him up all night." According to Waggoner, he and appellant were trying to sell the pills as "speed." Smalls gave them $10.00 for the pills. Laboratory analysis showed that the pills were Zomax, an anti-inflamatory drug. Appellant had told Waggoner that the pills came from the dentist and were a "pain killer." Contrary to appellant's assertion, this evidence is sufficient to sustain the conviction.

## IV

## MULTIPLICITY

Appellant contends that the offenses of larceny of government property and sale of the same property are multiplicious for findings purposes. We disagree, since there was a substantial interval of time between the theft of the property and its sale to a third person. *United States v. West*, 17 M.J. 145 (C.M.A.1984).

## V

## DISOBEDIENCE OF AN ORDER

Appellant performed extra duty at brigade headquarters from 1800 until 2200 on the day of the alleged offense. According to appellant's testimony, he was released from this duty at 2200 only to be

---

**2.** *See* Imwinkelried, *The Standard for Admitting Scientific Evidence,* 100 Mil.L.Rev. 99 (1983); 3 J. Weinstein and M. Berger, *Weinstein's Evidence* 702–16 (1982); *"The Admissibility of Novel Scientific Evidence: Frye v. United States, a Half-Century Later,* 80 Colum.L.Rev. 1197, 1221 n. 185 (1980). *Contra United States v. Bothwell,*

17 M.J. 684 (A.C.M.R.1983). The situation in the military justice system, where the parties have access to modern, neutral forensic services and where fact-finders are *de facto* blue-ribbon juries, is particularly well suited to dispel the principal concerns of those who prefer *Frye* on policy grounds.

summoned from his room at 2250 and ordered by his superior noncommissioned officer to perform another extra duty detail. Appellant repeatedly refused to comply, insisting that he was off duty. Disregarding further admonitions to comply with the order, he returned to his billets room. Appellant testified that he believed that battalion policy did not permit extra duty after 2200. In fact, battalion policy permitted extra duty until 2400. Against this backdrop, appellant contends that the trial judge erred by declining to give a defense-requested instruction on mistake of *fact* since there was evidence before the court that appellant believed the order was *unlawful*.

A soldier disobeys an order at his own peril. *United States v. Voorhees*, 16 C.M.R. 83, 113 (C.M.A.1954) (Latimer, J., concurring in part, dissenting in part); para. 169b, Manual for Courts-Martial, United States, 1969 (Rev. ed.); 2 W. Winthrop, Military Law and Precedents 889 (2d ed. 1896); W. Winthrop, Military Law and Precedents 296–97 (2d ed., 1920 reprint). This is an ancient principle of military law. It is a harsh rule, but an absolutely essential one. Certainly the rule is no more harsh than the realities of the battlefield which compelled its adoption. In combat, where the very existence of the nation is at stake, obedience to orders is vital. Sometimes commanders must order soldiers to lay down their very lives. For the sake of the lives of others and the accomplishment of the mission, those soldiers must be relied on to obey. In peacetime, soldiers must be trained in the same climate of obedience. The discipline which enables armies to prevail cannot be switched on and off like a lightbulb. The soldier must be conditioned to err on the side of obedience. Consequently, a soldier who disobeys an order because he believes that the order is illegal may nevertheless be punished if the order is in fact a lawful one.[3] Based on this premise, we reject the dicta in *United States v. Crump*, 39 C.M.R. 899, 901 (A.F.

B.R.1968), and appellant's assignment of error.

The findings of guilty and the sentence are affirmed.

Judge FELDER and Judge NAUGHTON concur.

---

**3.** Note that this does not mean that a patently illegal order is a defense to criminal misconduct.