UNITED STATES

v.

**Airman Timothy L. ALLBERY, FR279–72–7770, United States Air Force.**

ACM S28763.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 17 Nov. 1992.

Decided 20 Oct. 1994.

Appellate Counsel for Appellant: Colonel Terry J. Woodhouse, Colonel Jay L. Cohen, Lieutenant Colonel Frank J. Spinner, and Captain Robert E. Watson.

Appellate Counsel for the United States: Colonel Jeffery T. Infelise, Lieutenant Colonel Mark C. Ramsey, and Major John H. Kongable.

Before DIXON, YOUNG, and BECKER, Appellate Military Judges.

### OPINION OF THE COURT

YOUNG, Judge:

Court members convicted appellant of two specifications of making and uttering worthless checks by dishonorably failing to maintain sufficient funds in his checking account. Article 134, UCMJ, 10 U.S.C. § 934 (1988). The court members sentenced appellant to a bad-conduct discharge, confinement for 2 months, and reduction to E–1. Appellant assigns two errors: (1) the offenses are not punishable under the UCMJ because the checks were written to facilitate gambling; and (2) the evidence is factually and legally insufficient to establish appellant was grossly indifferent towards his account. We find no error and affirm.

### I. Gambling and Bad Checks

In 1966, over the vigorous dissent of Chief Judge Quinn, the Court of Military Appeals held that "[w]hether gaming is legal or illegal, transactions involving the same or designed to facilitate it are against public policy, and the courts will not lend their offices to enforcement of obligations arising therefrom." *United States v. Wallace,* 15 U.S.C.M.A. 650, 36 C.M.R. 148 (1966). Appellant now asks this Court to enforce that edict and set aside his conviction. The evidence at trial established that appellant wrote 21 checks, totaling $2,500, to the enlisted club at Ramstein Air Base, Germany, during an 18–day period starting 20 April and ending 7 May 1992. All of the checks, except one, were written to purchase quar-

ters so appellant could play the slot machines located in the enlisted club.

Counsel for the United States suggests that *Wallace* is no longer valid law, and that even if it is, the facts in appellant's case are distinguishable. The facts are slightly different. Nevertheless, we believe the Court of Military Appeals' edict in *Wallace* is so broad that we are unable to sufficiently distinguish the facts such as to justify a different result and still comply with *Wallace*.

Under the doctrine of *stare decisis*, courts have a *policy* of standing by precedent and not disturbing a point of settled law. *See* BLACK'S LAW DICTIONARY 1261 (5th ed. 1979). But, all precedents are not treated equally.

> Although "*stare decisis* has more force in statutory analysis than in constitutional adjudication because, in the former situation, Congress can correct our mistakes through legislation," there is no binding requirement to apply "*stare decisis* mechanically to prohibit overruling our earlier decisions determining the meaning of statutes."

*United States v. Clardy,* 13 M.J. 308, 315 (C.M.A.1982) (quoting *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 695, 98 S.Ct. 2018, 2038, 56 L.Ed.2d 611 (1978). We view rulings based on public policy to have even less force in *stare decisis* analysis than do constitutional rulings. Public policy is "the basic policy or set of policies forming the foundation of public laws, especially such policy not yet formally enunciated." THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 1464 (3d ed. 1992). Courts hold actions as being against public policy to avoid results they believe the public would perceive as unjust, yet upon which the legislature has not acted. Much of it is based on the judges' perceptions of the traditional customs and moral attitudes of the jurisdiction. But,

> [a] precedent should not be followed where the principle of law established by it appears unreasonable, or has become an anachronism because of the changed conditions of life. The policy of adhering to precedent should be deviated from where adherence to precedent is likely to be of greater mischief to the community than

can possibly result from disregarding stare decisis in a particular case.

17 AM.JUR.2D *Courts* § 187 (1965).

In his dissent in *Wallace,* Chief Judge Quinn clearly stated the case for upholding the conviction. "I am sure that all gambling is not so morally wrong that society cannot tolerate it in any of its manifold forms." *Wallace,* 36 C.M.R. at 151 (Quinn, C.J., dissenting). As examples of the widespread acceptability of certain forms of gambling in our society, Chief Judge Quinn cited insurance policies; bingo games and raffles of churches, veterans' organizations, and other charitable institutions; and speculation in the stock markets.

In the almost 30 years since *Wallace* was decided, the place of gambling in our society has undergone enormous change. Today, gambling, at least in some respects, is legal almost everywhere in the United States. It is not only condoned, it is organized, regulated, and largely promoted by the government as a means of raising revenue for the public coffers. The public, through referenda and statutes enacted by its representatives in legislatures, have established the acceptability of gambling as a form of entertainment and means of fund raising.

The bottom line is that we do not believe legal gambling is against public policy. Appellant's gambling was specifically authorized by, and conducted under, regulations of the Department of Defense. While we are not generally free to ignore precedent established by the Court of Military Appeals (*see United States v. Jones,* 23 M.J. 301, 302 (C.M.A.1987)), we believe it no longer makes sense to follow *Wallace.* Therefore, unless ordered by one of our superior courts to do so, we will not.

## II. Factual and Legal Sufficiency

■ Appellant asserts that the evidence is factually and legally insufficient to establish that he was grossly indifferent towards his account. Appellant claims he took action to make good on the checks after he learned they had bounced and that his failure to keep an accurate account balance does not amount to the gross indifference required to sustain

his conviction for failing to maintain sufficient funds in his account.

Under Article 66(c), UCMJ, this Court has a duty to determine both the legal and factual sufficiency of the evidence. The test for legal sufficiency is whether, considering the evidence in the light most favorable to the prosecution, a reasonable fact-finder could have found all the essential elements beyond a reasonable doubt. The test for factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are personally convinced of appellant's guilt beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324 (C.M.A.1987).

"The gist of the offense[s of which appellant was convicted] lies in the conduct of the accused after uttering the instrument. Mere negligence in maintaining one's bank balance is insufficient for this offense, for the accused's conduct must reflect bad faith or gross indifference in this regard." MANUAL FOR COURTS-MARTIAL, UNITED STATES, Part IV, ¶ 68c (1984). In 18 days, appellant wrote 21 checks totaling $2,500. At the time, appellant's base pay was $965.40 per month, and he had no expectation of substantial additional income to supplement his account balance. Appellant's failure to keep an account balance while continuing to make and utter these checks, with total disdain as to whether the checks would be honored, amounted to gross indifference.

After examining the evidence of record, we are convinced that a reasonable factfinder could have found all the essential elements beyond a reasonable doubt. Furthermore, we are convinced beyond a reasonable doubt of appellant's guilt.

### III. Conclusion

The findings and sentence are correct in law and fact, and no error prejudicial to the substantial rights of appellant occurred. Accordingly, the findings and sentence are

AFFIRMED.

Chief Judge DIXON and Judge BECKER concur.