**UNITED STATES, Appellee,**

v.

**Specialist Theresa S. THOMPSON,**
**United States Army,**
**Appellant.**

**ARMY 9502082.**

U.S. Army Court of Criminal Appeals.

17 Sept. 1997.

For Appellant: Captain Norman R. Zamboni, JA; Captain Patricia A. Harris, JA (on brief).

For Appellee: Colonel John M. Smith, JA; Lieutenant Colonel Eva M. Novak, JA; Major Virginia G. Beakes, JA; Captain Thomas N. Auble, JA (on brief).

Before EDWARDS, KAPLAN, and GONZALES, Appellate Military Judges.

### OPINION OF THE COURT
### ON REMAND

EDWARDS, Senior Judge:

A military judge sitting as a general court-martial convicted the appellant, pursuant to her pleas, of four specifications of drawing and uttering worthless checks with intent to defraud in violation of Article 123a, Uniform Code of Military Justice, 10 U.S.C. § 923a (1988)[hereinafter UCMJ]. The convening authority approved the adjudged sentence of a bad-conduct discharge, confinement for five months, forfeiture of all pay and allowances, and reduction to Private E1.

On 23 July 1996, this court affirmed the findings and sentence. *United States v. Thompson,* ARMY 9502082 (Army Ct.Crim. App. 23 July 1996)(unpub.). Thereafter, our superior court, the United States Court of Appeals for the Armed Forces, set aside our decision and remanded this case for further review based on its opinion of 30 July 1996 in *United States v. Allbery,* 44 M.J. 226 (1996). Specifically, since our decision preceded *Allbery,* our superior court ordered this court to consider whether *Allbery* affects the validity of any of the specifications in this case.

It is clear that our superior court in *Allbery* adhered to the public policy rationale which was the basis for its precedent in *United States v. Wallace,* 15 U.S.C.M.A. 650, 36 C.M.R. 148, 1966 WL 4432 (1966). *Wallace* has long stood for the proposition that gambling transactions are against public policy and the courts will not lend their offices to enforcement of obligations arising therefrom. *Id.* at 149.

In our 23 July 1996 decision, we followed stare decisis and applied what we believed to be the public policy protection intended by the holding in *Wallace*. We do so again; and, in also following *Allbery,* we hold that the appellant's conduct of writing and uttering worthless checks is criminally punishable even though, in this instance, she subsequently used most of the ill-gained cash proceeds to gamble at near-by slot machines. Thus, we conclude that *Allbery* does not affect the "entire" vitality of any specification in this case.[1]

Appellate counsel for both the appellant and the government have correctly focused their positions on the single (and only) specification that we find to have any arguable claim to the public policy protections addressed in *Allbery* and *Wallace*.[2] In Specification 5 of the Charge, the appellant providently pleaded guilty to writing and uttering three worthless checks, with intent to defraud, for fifty dollars each ($150.00 total) to the Navy Club, Yongsan Compound, Republic of Korea. Two checks were written and cashed on 4 September 1995, and the third check was negotiated on 5 September 1995. In our earlier decision, we found that when each of these three bad checks was cashed, the appellant did not intend to gamble with all the proceeds she received. Therefore, we concluded that, under these particular facts, the public policy protection of *Wallace* was not triggered since *all* the money was not intended to be used for gambling. We again find these facts, but in light of *Allbery,* we have modified our legal conclusion.

We also find the following facts to be relevant to this particular offense and its time frame. The appellant, a thirty-two year old college graduate with a degree in eco-

nomics, arrived in Korea in late April 1995 and began playing slot machines in June 1995. She was diagnosed as a pathological gambler for the period June 1995 to September 1995. She had served less than one year on active duty. In August 1995, she was officially counseled about six dishonored checks, yet she continued to write checks knowing they would be dishonored. The appellant was not accustomed to balancing her checkbook and had not done so since June, 1995.

The Navy Club had one cashier who serviced both restaurant customers and game room customers. As we interpret *Wallace,* this fact put the club in the position of "facilitating a gaming transaction" and, under the facts of this case, establishes a direct connection between check cashing services and gambling activity.[3] With this connection established, we believe the gambler's (appellant's) intent when cashing a check is relevant and dispositive. Other informative facts are that there were nineteen slot machines in the Navy Club's game room, and the Club's cashier could see inside the game room from the location where checks were cashed. The cashier did not know the appellant or of her pattern of gambling and writing bad checks. On each occasion that the appellant cashed a fifty-dollar check at the Navy Club, she received forty-dollars in four ten-dollar rolls of quarters and ten dollars in cash other than quarters. She was free to do anything she pleased with the cash she received from uttering these three checks. She never wrote an "I.O.U." to any facility where she played the slot machines, nor were any of these three checks written to cover previous bad checks. Each time the appellant cashed a check at the Navy Club she would quickly thereafter play the slot machines.[4] The ex-

---

1. We have also, again, considered those matters personally raised by the appellant pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982), and find them to be without merit.

2. The appellant was convicted of four specifications of drawing and uttering worthless checks with intent to defraud. The four specifications covered the time period 20 July 1995 through 5 September 1995 and represented forty-two checks totaling $6,457.50. Appellant's gambling was limited to slot machine playing at four facilities on Yongsan: the Main Post Club; the Lucky Seven Club; the Navy Club; and the Dragon Hill Lodge.

3. The "direct connection" between check cashing services and gambling activity has also been addressed by this court in *United States v. Green,* 44 M.J. 828 (Army Ct.Crim.App.1996) and *United States v. Slaughter,* 42 M.J. 680 (Army Ct.Crim. App.1995).

4. As noted, appellant would gamble at four facilities on Yongsan.

act dates that she played the slot machines at the Navy Club and the amount of money she won or lost from playing there is not certain from the evidence of record. We will not speculate. We are certain that when the appellant cashed these checks she did not intend to gamble the thirty dollars (total) that she received in cash, other than quarters. It was the appellant's habit and intent to spend this amount on items for herself, such as food and drink.

We again find that the public policy precedent of *Wallace* and *Allbery* control here; they are not inapposite to the instant facts. As before, the question, in our mind, is how much public policy protection should this appellant receive when we find that not all of the ill-gotten monies she obtained were *intended* for slot machine play? In other words, should the total of $150.00 be an all or nothing outcome, or should we divide the total into the suggested parts of $120.00 public policy protection and $30.00 of no protection. Appellate counsel have superbly presented their views on these three potential outcomes. Our charter is to apply the protection to the facts and, then, reach the sensible result.

In doing so, we believe it is inappropriate to speculate on how much, how often, or what the outcome was of any gambling this appellant may have done with any monies she obtained from passing three fifty-dollar bad checks at the Navy Club. We believe that in order to qualify for the full protection intended by *Wallace* and, then, *Allbery*, an appellant should present evidence of an intent to gamble with all the ill-gained proceeds. Here, the appellant stated that her intent may have changed after cashing each check and that, possibly, some, most, or even all of the total proceeds ($150.00) were gambled— at sometime(s). In our view, the appellant's intent at the time she cashed the worthless checks is where the public policy protection line should be drawn. Accordingly, we hold that, under the particular facts of this case, to afford the appellant full protection from prosecution for three worthless checks she wrote to the Navy Club would stretch beyond proper limits the public policy rationale of *Allbery* and *Wallace.*

Accordingly, the court affirms only so much of the findings of guilty of Specification 5 of the Charge that finds a value of $10.00 for each check, for a total value of $30.00. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted and the entire record, the court affirms the sentence.

Judge KAPLAN and Judge GONZALES concur.