UNITED STATES

v.

Esteban FALCON, Postal Clerk
Seaman (E–3), U.S. Navy.

NMCCA 220401483.

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 24 Oct. 2003.

Decided 10 Oct. 2006.

CDR Michael Wentworth, JAGC, USNR, Appellate Defense Counsel.

Maj J.Ed Christiansen, USMC, Appellate Defense Counsel.

Lt Guillermo Rojas, JAGC, USNR, Appellate Government Counsel.

Before WAGNER, Senior Judge, VINCENT, and STONE, Appellate Military Judges.

STONE, Judge:

A military judge, sitting as a special court-martial, convicted the appellant, pursuant to his pleas, of three specifications of making and uttering checks without sufficient funds, and two specifications of opening, secreting, and stealing certain mail matter, in violation of Articles 123a and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 923a and 934. The military judge sentenced the appellant to confinement for 11 months, reduction to pay grade E–1, and a bad-conduct discharge. The convening authority approved the sentence as adjudged.

We have carefully reviewed the record of trial, the appellant's four assignments of error—that the military judge failed to advise the appellant of the *Wallace–Allbery* "gambler's defense," that the post-trial delay in the case substantially prejudiced the appellant, that Specifications 1 and 2 of Charge V are an unreasonable multiplication of charges, and that the staff judge advocate's recommendation (SJAR) is defective—and the Government's response. We determine that the appellant is entitled to relief on the findings due to unreasonable multiplication of charges, which we will provide in our decretal paragraph. Otherwise, we conclude that the findings and the sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

## Statement of Facts

Between April and July 2003, the appellant cashed 43 bad checks totaling $3,100 at two enlisted clubs, "Globe and Anchor" and "Smuggler's Cove." Prosecution Exhibit 1 at 2. The appellant knew he did not have sufficient funds to cover these checks, and he used the money to gamble at slot machines located within those facilities. Record at 22–35; PE 1 at 2–3. Although the slot machine areas were located "right next" to the cash cages where the appellant cashed the checks, neither of the payees had any knowledge that the appellant was using the money he received for gambling. Record at 33–34; PE 1 at 3. In fact, the Globe and Anchor and Smuggler's Cove were used by many patrons as convenient places to cash checks. Record at 34.

In addition, on or about 16 June 2003, the appellant was working as a postal clerk in the Naval Hospital post office, when he saw two packages that appeared to contain DVD's. *Id.* at 17. One of the packages was addressed to Lieutenant Commander (LCDR) Deborah J. Shumaker, U.S. Navy, and the other package was addressed to Hospitalman (HN) Sarah J. Haug, U.S. Navy. PE 1 at 4. The appellant opened both packages, took out the numerous DVD's inside, and hid the DVD's in a post office safe with the intent of keeping them for himself. Record at 19; PE 1 at 4.

## The "Gamblers Defense"

In his first assignment of error, the appellant argues that the military judge erred in accepting his guilty pleas to all specifications under Charge IV, and to the Additional Charge and the specification thereunder. All were "bad check" offenses in violation of Article 123a, UCMJ, where the proceeds from the bad checks were used exclusively for gambling and where the military judge did not advise the appellant of the elements of the *Wallace–Allbery* "gambler's defense." Appellant's Brief of 29 Dec 2004 at 3–4; *see United States v. Wallace,* 36 C.M.R. 148,

1966 WL 4432 (C.M.A.1966); *United States v. Allbery,* 44 M.J. 226 (C.A.A.F.1996). We disagree. We hold that the "gamblers defense" does not apply to prosecutions for making and uttering bad checks under Article 123a, UCMJ, and, therefore, the military judge was not required to advise the appellant of that defense in determining the providence of his plea of guilty.

■ As set forth in *Wallace,* the *Wallace–Allbery* "gamblers defense" (hereinafter simply, "gamblers defense") stands for the proposition that prosecutions under Article 134 for making and uttering worthless checks in support of gambling transactions cannot be maintained where there is no showing of dishonor in failing to maintain sufficient funds for payment of the check upon its presentment. *Wallace,* 36 C.M.R. at 149.[1] *Allbery,* which forms the second half of the gamblers defense formal name, stands for the somewhat unrelated proposition that service courts are not free to abandon the policy of non-enforcement of gambling debts established in *Wallace. Allbery,* 44 M.J. at 228–29. Both *Wallace* and *Allbery* were prosecutions for making and uttering worthless checks in violation of Article 134, UCMJ.

■ The issue of whether the *Wallace–Allbery* gambler's defense applies to cases prosecuted under Article 123a, UCMJ, has not been addressed by this court or by the Court of Appeals for the Armed Forces (CAAF). Our sister service courts of criminal appeals are divided on the issue. The Air Force Court of Criminal Appeals does not recognize the gamblers defense for Article 123a offenses. *United States v. Ewing,* 50 M.J. 622, 627–28 (A.F.Ct.Crim.App.1998). The Army Court of Criminal Appeals, on the other hand, applies the gambler's defense to Article 123a offenses. *United States v. Greenlee,* 47 M.J. 613 (Army Ct.Crim.App. 1997); *United States v. Thompson,* 47 M.J. 611 (Army Ct.Crim.App.1997); *United States v. Green,* 44 M.J. 828 (Army Ct.Crim.App. 1996). For the reasons set forth below, we agree with the Air Force Court and hold that the *Wallace–Allbery* gambler's defense does not apply to offenses prosecuted under Article 123a, UCMJ.

The first reason that we do not apply the gambler's defense to worthless check offenses prosecuted under Article 123a, UCMJ, is that there is no requirement under Article 123a, UCMJ, that an appellant act with dishonor in failing to maintain sufficient funds on deposit in relation to the check in question. Article 134, UCMJ, on the other hand, requires the accused, after making and uttering a check, to *dishonorably* fail to maintain sufficient funds in the bank account upon which the check was written. *See* MANUAL FOR COURTS—MARTIAL, UNITED STATES (2002 ed.), Part IV, ¶ 68c. As our superior court explained in *Wallace,* the underlying facts of that case negated any finding of dishonorable conduct by that appellant. In *Wallace,* the court described a situation where the Board of Governors of the gambling establishment, which was an American military officer's club, was aware of and also accommodating to the appellant's habit of writing worthless checks to cover his gambling debts. Indeed, the Board of Governors comfortably tolerated Wallace's behavior "confident, in light of [the] accused's character, that the club would eventually be paid." *Wallace,* 36 C.M.R. at 149. The court, therefore, concluded that where the payee has a tacit understanding with the gambler that worthless checks will be accepted on the understanding that the debt will eventually be satisfied, the accused has not acted with dishonor and therefore cannot be convicted of dishonorably failing to maintain sufficient funds on deposit to meet the payment of the checks upon their presentment in violation of Article 134, UCMJ. The *Wallace* court held, "we find the evidence legally insufficient to support the court-martial's conclusion that [the] accused engaged in dishonorable conduct." *Id.* at 151. To the contrary, in a prosecution for worthless checks under Article 123a, UCMJ, no element of dishonor is required and, therefore, the *Wallace–Allbery* defense, which deals solely with whether or not the

---

1. We note that the MANUAL FOR COURTS—MARTIAL, UNITED STATES (2005 ed.), does not identify gambling as a special or affirmative defense for making and uttering bad checks. *See* RULE FOR COURTS—MARTIAL 916, MANUAL FOR COURTS—MARTIAL, UNITED STATES (2005 ed.).

failure to maintain sufficient funds was dishonorable, cannot apply.

The second reason we conclude that the gamblers defense should not be applied to cases arising under Article 123a, UCMJ, is that an Article 123a violation requires intent to defraud the payee. As mentioned above, Article 134, UCMJ, worthless check offenses merely require a dishonorable failure to maintain sufficient funds. As explained in *Ewing*, "[t]here is no evidence that our superior court meant to extend the gambling policy bar to prosecution to cases in which an accused's intent in issuing the check is to defraud the payee, and we will not do so." *Ewing*, 50 M.J. at 628.

Finally, assuming, arguendo, that the gamblers defense should apply to cases arising under Article 123a, UCMJ, we still would not require the military judge to have explained the defense to the appellant in this case because there is no question that the appellant acted with dishonor at all times in relation to his gambling obligations. In other words, the facts at bar are quite dissimilar from the facts of *Wallace*. In *Wallace*, the appellant and his payee had an understanding that worthless checks were tolerated and readily accepted with the understated agreement that the debt would eventually be satisfied. Here, however, there is no indication of such a mutual agreement between the appellant and the enlisted clubs he patronized. To the contrary, the appellant admitted that he kept a ledger of his account and knew that he was writing checks in excess of his account balance, and that he specifically intended to defraud both enlisted clubs at the time he wrote his bad checks. Record at 26–31. Because the appellant's responses to the military judge during the providence inquiry gave no hint of the existence of a mutual understanding with his payees as in *Wallace*, we easily conclude that the military judge was not required to explore the possibility of the existence of the gamblers defense with the appellant.

Accordingly, we find that the military judge did not abuse his discretion in accepting the guilty pleas, and that there is no substantial basis in law and fact for questioning the appellant's pleas to the specification under Charge IV, and to the Additional Charge and the specification thereunder. We further hold that the *Wallace–Allbery* gamblers defense does not apply to cases prosecuted under 123a, and even if it did, we find the facts in the case at bar to be clearly distinguishable.

**Post–Trial Delay**

In his second assignment of error, the appellant argues that he suffered from two periods of excessive post-trial delay: 1) the 105–day period from authentication to preparation of the SJAR, and 2) the 37–day period from receipt of the appellant's clemency request to the preparation of the SJAR addendum and submission to the convening authority for action. We disagree.

We initially conduct a due process analysis in all claims of excessive post-trial delay. *United States v. Moreno*, 63 M.J. 129 (C.A.A.F.2006). If no constitutional violation is established, we then analyze the delay under our broad Article 66(c), UCMJ, mandate. *United States v. Brown*, 62 M.J. 602 (N.M.Ct.Crim.App.2005)(*en banc*).

We consider four factors in determining if post-trial delay violated the appellant's constitutional right to due process: (1) the length of the delay; (2) the reasons for the delay;(3) the appellant's assertion of the right to a timely appeal; and (4) prejudice to the appellant. *United States v. Jones*, 61 M.J. 80, 83 (C.A.A.F.2005)(citing *Toohey v. United States*, 60 M.J. 100, 102 (C.A.A.F.2004)). If the length of the delay itself is not unreasonable, there is no need for further inquiry. If, however, we conclude that the length of the delay is "facially unreasonable," we must balance the length of the delay with the other three factors. *Id.* Moreover, in extreme cases, the delay itself may " 'give rise to a strong presumption of evidentiary prejudice.' " *Id.* (quoting *Toohey*, 60 M.J. at 102).

In this case, we find that neither period of post-trial delay claimed by the appellant is facially unreasonable. Therefore, there is no need for further inquiry and we decline to grant relief. We have additionally considered all post-trial delay.

## Unreasonable Multiplication of Charges

In his third assignment of error the appellant alleges that his separate convictions on the 2 specifications under Charge V are an unreasonable multiplication of charges where the opening, secreting, and theft of the mail was committed at substantially the same time and place. We agree.

■ To determine whether there has been an unreasonable multiplication of charges, we consider five factors: (1) did the appellant object at trial; (2) are the charges aimed at distinctly separate criminal acts; (3) do the charges misrepresent or exaggerate the appellant's criminality; (4) do the charges unreasonably increase the appellant's punitive exposure; and (5) is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges and specifications? *United States v. Quiroz*, 57 M.J. 583, 585–86 (N.M.Ct.Crim.App.2002)(*en banc*), *aff'd*, 58 M.J. 183 (C.A.A.F.2003)(summary disposition). Furthermore, in deciding issues of unreasonable multiplication of charges, we also consider RULE FOR COURTS–MARTIAL 307(c)(4), MANUAL FOR COURTS–MARTIAL, UNITED STATES (2002 ed.), Discussion, which provides the following guidance: "What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person."

■ Applying the non-exclusive *Quiroz* factors to the case at bar, we first note that the appellant did not object or request any relief at trial. Although important, that single factor is not dispositive of the issue.

As far as the second and third factors are concerned, we find that they mitigate in the appellant's favor with respect to Charge V and each of the specifications of which he was found guilty. In this case, the appellant opened, secreted, and stole the contents of the two packages identified in Specifications 1 and 2 of Charge V at exactly the same time and place. (Record at 17–19; PE 1 at 4.) Therefore, even though the items that were stolen were from two different victims, we are unable to conclude that Specifications 1 and 2 of Charge V are aimed at distinctly separate acts, but, instead, constitute a single course of criminal conduct. *Quiroz*, 57 M.J.

at 585–86. *See also* MCM, Part IV, ¶ 46c(h)(ii)("When a larceny of several articles is committed at substantially the same time and place, it is a single larceny....)".

We also find that the fourth factor mitigates in the appellant's favor. Although the maximum punishment limitations pertaining to special courts-martial capped the appellant's punishment, we find that he should not suffer the prejudice of an unwarranted criminal conviction. *See Ball v. United States*, 470 U.S. 856, 865, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985). Moreover, our superior Court has held that an "unauthorized conviction ... constitutes unauthorized punishment in an of itself." *United States v. Savage*, 50 M.J. 244, 245 (C.A.A.F.1999).

In completing our *Quiroz* analysis, regarding the fifth factor, we do not find that the prosecution acted in bad faith or engaged in abusive tactics in this case.

We therefore conclude that the two specifications under Charge V are not aimed at distinctly separate acts, but constitute a single course of criminal conduct arising from the intent to steal DVD's from two individuals from the mail system at the same time and place. We will provide appropriate relief in our decretal paragraph.

## Defective SJAR

In his fourth assignment of error, the appellant argues that the SJAR was defective in that it failed to accurately summarize his prior service in the United States Marine Corps, resulting in plain error. We disagree.

■ If an appellant does not make a timely comment on an error in the SJAR, the error is waived absent plain error. *United States v. Capers*, 62 M.J. 268, 269 (C.A.A.F. 2005); R.C.M. 1 106(f)(6). To prevail under a plain error analysis, the appellant must show: "(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right." *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F.2000). The third prong of the plain error analysis is satisfied if the appellant makes some colorable showing of possible prejudice. *Id.*

■ We find that the appellant has not made the required showing of prejudice to

his substantial rights as a result of the errors in the SJAR, and thus conclude that he waived the issue when he failed to raise these errors in his response to the SJAR. This issue is without merit.

## Conclusion

We consolidate Specifications 1 and 2 of Charge V into a single specification to read as follows: "In that Seaman Esteban Falcon, U.S. Navy, U.S. Naval Hospital, Marine Corps Base, Okinawa, Japan, on active duty, did, at Okinawa, Japan, on or about 16 June 2003, wrongfully open, secret, and steal certain mail matter, to wit: a package addressed to Lieutenant Commander Deborah J. Shumaker, U.S. Navy, and a package addressed to Hospitalman Sarah J. Haug, U.S. Navy, which said packages were then in the U.S. Naval Hospital Post Office before said packages were delivered to the said Lieutenant Commander Deborah J. Shumaker and Hospitalman Sarah J. Haug." The remaining findings as modified above are affirmed.

As a result of our action on the findings, we have reassessed the sentence in accordance with *United States v. Cook*, 48 M.J. 434, 438 (C.A.A.F.1998). Having reassessed the sentence, we affirm the sentence as approved by the convening authority. We conclude that the approved sentence is appropriate for the offenses and this offender, and that such an affirmed sentence is no greater than that which would have been awarded by a court-martial for the charge and specification that we here affirm.

Senior Judge WAGNER and Judge VINCENT concur.