UNITED STATES, Appellee

v.

Esteban FALCON, Postal Clerk Seaman
U.S. Navy, Appellant

No. 07-0105

Crim. App. No. 200401483

United States Court of Appeals for the Armed Forces

Argued October 15, 2007

Decided January 9, 2008

ERDMANN, J., delivered the opinion of the court, in which
EFFRON, C.J., and BAKER, STUCKY, and RYAN, JJ., joined.

Counsel

For Appellant:  Major Richard D. Belliss, USMC (argued);
Lieutenant Brian L. Mizer, JAGC, USN.

For Appellee:  Lieutenant David H. Lee, JAGC, USN (argued);
Major Brian K. Keller, USMC (on brief); Commander Paul C.
LeBlanc, JAGC, USN, and Lieutenant Jessica M. Hudson, JAGC, USN.

Military Judge:  John G. Baker


**This opinion is subject to revision before final publication.**

United States v. Falcon, No. 07-0105/NA

Judge ERDMANN delivered the opinion of the court.

Postal Clerk Seaman Esteban Falcon entered guilty pleas and was convicted of two specifications of opening and stealing mail, in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2000), and three specifications of making and uttering checks without sufficient funds, in violation of Article 123a, UCMJ, 10 U.S.C. § 923a (2000). On appeal to the United States Navy-Marine Corps Court of Criminal Appeals, Falcon argued that the military judge erred in accepting his guilty pleas to the bad check offenses without first informing him of the availability of the "gambler's defense" that was recognized in United States v. Wallace, 15 C.M.A. 650, 653, 36 C.M.R. 148, 151 (1966). The Court of Criminal Appeals found that the defense was not applicable to the Article 123a, UCMJ, offenses and that the pleas were provident. United States v. Falcon, 65 M.J. 582, 584-85 (N-M. Ct. Crim. App. 2006). Before this court Falcon again argues that his pleas were not provident to the bad check charges because of the gambler's defense. We agree with the conclusion of the Court of Criminal Appeals and take this opportunity to review the continuing validity of the Wallace decision. We find that the rationale supporting the gambler's defense is no longer valid and therefore overrule Wallace.

2

Falcon also asserts that during the providence inquiry the military judge should have inquired into the possibility of a partial mental responsibility defense because of statements made during the trial relating to Falcon's gambling addiction and his diagnosis as pathological gambler. We hold that the military judge did not abuse his discretion when he did not advise Falcon of the possibility of a partial mental responsibility defense.

## Background

Over the course of four months, Falcon wrote forty-nine checks totaling $4300.00 at two enlisted clubs.[1] Falcon testified that he would cash his checks at the clubs' cash cages and immediately take the money and use it in the slot machines located near the cash cages. Falcon stipulated that he knew that he did not have enough money in his checking account to cover the checks and that his conduct was wrongful and unlawful.

At the plea inquiry, Falcon stated he never represented to the cashiers that he did not have enough money in the account to cover the checks and his actions were designed to mislead the staff into thinking each check was valid. Additionally, Falcon

---

[1] Falcon was found guilty of three specifications of making and uttering checks without sufficient funds. The Court of Criminal Appeals' factual summary reflects that he wrote forty-three checks for a total of $3100.00. See United States v. Falcon, 65 M.J. 582, 583 (N-M. Ct. Crim. App. 2006). However, those figures do not include the checks in the third specification. The correct figures are forty-nine checks for a total of $4300.00.

stipulated that the clubs did not actively facilitate or otherwise have any knowledge of any gambling that Falcon might have engaged in after they cashed the checks. Falcon testified he intended to defraud the two clubs through his check-writing practices.

During the sentencing portion of the trial, Falcon testified that he had a gambling addiction and described his gambling practices. The Government called Staff Sergeant (SSgt) Daniel Poole during sentencing, who was the head of the Pathological Gambling Counseling Services program at the base hospital. Poole testified that Falcon had been diagnosed as a "pathological gambler" by a doctor at the Naval Hospital and that Poole had performed an initial evaluation on Falcon and had recommended counseling.

## Discussion

### Applicability of the Gambler's Defense to Article 123a, UCMJ

In Wallace, the defendant was convicted under Article 134, UCMJ, with making worthless checks by dishonorably failing to maintain sufficient funds in his account. Id. at 650, 36 C.M.R. at 148. Wallace held that under the circumstances of that case, the failure to maintain sufficient funds was not "dishonorable" and could not be the basis of a criminal prosecution. Id. at 653, 36 C.M.R. at 151. In addition, Wallace concluded that courts should not lend their offices to the enforcement of

4

gaming transactions that were against public policy.  Id. at 653, 36 C.M.R. at 151.  This aspect of Wallace has come to be known as the gambler's defense.

Falcon was charged with making worthless checks without sufficient funds under Article 123a, UCMJ.  He contends the Wallace gambler's defense should apply to Article 123a, UCMJ, offenses as well as Article 134, UCMJ, offenses because there is no substantive difference between the two offenses.  He argues that the policy considerations behind the defense should apply for all worthless check offenses where, as here, the checks were written to a military-operated club for cash that was spent in the club's nearby gambling facilities and where the worthless checks were accepted with the club's implicit awareness and encouragement.

The Government responds that the two offenses contain different elements and that an Article 134, UCMJ, offense occurs after the check is written when the servicemember fails to keep money in his or her account, as opposed to an Article 123a, UCMJ, offense where the actus reus is complete when the check is written.  Due to the differences in the two statutes, the Government argues that the gambler's defense does not apply to Article 123a, UCMJ, offenses.

The service courts are divided as to whether the Wallace gambler's defense applies to Article 123a, UCMJ, offenses.  The

5

United States v. Falcon, No. 07-0105/NA

Army Court of Criminal Appeals extended Wallace to Article 123a, UCMJ, offenses but did so without analysis, simply assuming that the gambler's defense was applicable. See United States v. Greenlee, 47 M.J. 613 (A. Ct. Crim. App. 1997); United States v. Thompson, 47 M.J. 611 (A. Ct. Crim. App. 1997); United States v. Green, 44 M.J. 828 (A. Ct. Crim. App. 1996). The Air Force Court of Criminal Appeals held that the Wallace gambler's defense was not applicable to Article 123a, UCMJ, offenses based on the structural differences in the statutes and the different "intent" elements. United States v. Ewing, 50 M.J. 622, 627-28 (A.F. Ct. Crim. App. 1998). The Navy-Marine Corps Court of Criminal Appeals, in the decision below, followed the Air Force court's approach. Falcon, 65 M.J. at 584.

A worthless check offense under Article 134, UCMJ, requires that the accused "dishonorably fail[ed] to maintain funds" after the check was made and uttered. Manual for Courts-Martial, United States pt. IV, para. 68 (2005 ed.) (MCM). In contrast, the elements of Article 123a, UCMJ, include knowledge by the accused that the accused did not have sufficient funds at the time of writing the check and "that the act was committed with the intent to defraud." MCM pt. IV, para. 49.b.(1). The Article 134, UCMJ, offense does not require an intent to defraud or knowledge by the accused that he has insufficient funds to cover the check. In fact, Article 134, UCMJ, can be satisfied

6

with bad faith or gross indifference, which is a lesser mens rea than the specific intent to defraud required in Article 123a, UCMJ. See MCM pt. IV, para. 68.c. We therefore reject Falcon's argument that the elements of these two offenses are without difference.

In Wallace, the court concluded that issuing worthless checks to a service club, which accepted the checks for a gambling transaction knowing they were worthless, was not "dishonorable" conduct under Article 134, UCMJ. 15 C.M.A. at 653, 36 C.M.R. at 151. While the actions of the service club impacted the "dishonorable" determination in Wallace, the actions of the payee have no impact where an offense requires the payor to act with a specific intent to defraud, as does Article 123a, UCMJ. An Article 123a, UCMJ, offense, unlike an Article 134, UCMJ, offense, is complete once the check is proffered and before the club acts or the accused uses the money for gambling, which further distinguishes the gambler's defense and Article 123a, UCMJ. See United States v. Margelony, 14 C.M.A. 55, 59, 33 C.M.R. 267, 271 (1963).

Based on these differences in the two statutes, we conclude that the gambler's defense does not extend to Article 123a,

7

UCMJ, and that the military judge did not err in accepting Falcon's guilty pleas without informing him of the defense.[2]

## Revisiting Wallace

We now turn to the background and underpinnings of the gambler's defense. In 1957, this court addressed a conviction where the accused wrote worthless checks to co-participants in an illegal gambling game, so that he could continue gambling. United States v. Walter, 8 C.M.A. 50, 23 C.M.R. 274 (1957). The court held that a conviction for larceny under those circumstances could not be upheld because the actions in which the participants were engaged were against public policy. Id. at 53-54, 23 C.M.R. at 277-78. A year later, the court held that a worthless check used to buy poker chips was "neither legally nor morally" valid and that the accused's refusal to make good on a gambling debt was not "dishonorable." United States v. Lenton, 8 C.M.A. 690, 693-94, 25 C.M.R. 194, 197-98 (1958). Both of these decisions were based on public policy considerations and dealt with gambling that was illegal. Lenton, 8 C.M.A. at 693-94, 25 C.M.R. at 197-98; Walter, 8 C.M.A. at 53-54, 23 C.M.R. at 277-78.

---

[2] Even if the gambler's defense had been available to Falcon under Article 123a, UCMJ, the facts in this record would not support its application. Falcon admitted that the clubs had no knowledge of his gambling practices or that the checks were worthless.

We next addressed the criminal liability of servicemembers who wrote worthless checks to participate in gambling conducted lawfully on a military installation.  Wallace, 15 C.M.A. at 650, 36 C.M.R. at 148.  Wallace was convicted under Article 134, UCMJ, of dishonorably failing to maintain funds to support checks he wrote to an officers' club located in Germany.  Id. at 650, 36 C.M.R. at 148.  Wallace wrote these checks to the club in exchange for quarters he used to play the slot machines in the same club.  Id. at 651, 36 C.M.R. at 149.

Wallace wrote checks of increasing value to cover the returned checks.  Id. at 651, 36 C.M.R. at 149.  Although he had no formal agreement with the club about his worthless checks, the Board of Governors of the club (of which he was a member) was aware of Wallace's practice.  Because the Board was confident he would eventually pay these debts, it allowed the practice to continue.  Id. at 651, 36 C.M.R. at 149.  As in Walter and Lenton, the court's decision was based on public policy considerations.  The court stated that the legality of slot machines in American military establishments overseas was an issue that they need not decide because "[w]hether gaming is legal or illegal, transactions involving the same or designed to facilitate it are against public policy, and the courts will not lend their offices to enforcement of obligations arising therefrom."  Id. at 651, 36 C.M.R. at 149.

In reversing Wallace's conviction, the court stated that the "issuance of a worthless check in a gambling game or as a means of facilitating a gaming transaction [could not] be made the basis of a criminal prosecution." Id. at 653, 36 C.M.R. at 151. The court also concluded that Wallace's actions were not dishonorable under Article 134, UCMJ, because the club facilitated his bad-check writing practice by knowingly cashing them. Id. at 653, 36 C.M.R. at 151.

Almost thirty years after Wallace, the Air Force Court of Criminal Appeals rejected the rationale of Wallace in United States v. Allbery, 41 M.J. 501, 502 (A.F. Ct. Crim. App. 1994). The Air Force court found that legal gambling was not against public policy and therefore "it no longer makes sense to follow Wallace." Id. On appeal, this court was unanimous in holding that the lower court did not have the discretion to depart from our precedents, although only a plurality found that public policy as to gambling had not changed since Wallace. United States v. Allbery, 44 M.J. 226, 227-31 (C.A.A.F. 1996).

The public policy rationale of Walter and Lenton was based on the illegality of gambling. Wallace extended the public policy basis for not criminalizing gambling debts to both illegal and legal gambling. In the fifty years since Walter and the forty-one years since Wallace, our society has seen legal gambling grow both in acceptance and popularity. Governments at

10

all levels sanction and often tax a broad scope of gambling activities.[3]  Public policy relating to gambling is primarily a legislative function, and therefore, courts look to legislative enactments for determinations of public policy.  Cf. Building Serv. Employees Int'l Union, Local 262 v. Gazzam, 339 U.S. 532, 537-38 (1950) (finding legislative action on the organization of laborers for bargaining purposes to be the state's public policy).  There can be little dispute that public policy on legal gambling has changed over the past fifty years.  In this environment, when the military allows gambling at service clubs around the globe, it is inconsistent for this court to continue to classify legal gambling as being against public policy.

Debts and offenses that result from legal gambling should not be treated differently than those that occur from other legal conduct.  When a servicemember writes a check to participate in legal gambling, he or she should not be able to

---

[3] In fiscal year 2005 over $50 billion were spent on state sponsored lotteries in the United States producing over $15 billion in revenue for the states.  Alicia Hansen, Tax Foundation, Gambling with Tax Policy: States' Growing Reliance on Lottery Tax Revenue 1 (2007), available at http://www.tax foundation.org/files/bp54.pdf.  In 2005 commercial casinos in the United States took in over $30 billion and paid almost $5 billion in direct gaming taxes.  American Gaming Association, State of the States: The AGA Survey of Casino Entertainment 2 (2006), available at http://www.americangaming.org/assets/files /2006_Survey_for_Web.pdf.

rely on antiquated public policy to avoid his or her legal obligations.[4]

We are "not unmindful of the importance that the doctrine of stare decisis plays in our decision-making."  United States v. Rorie, 58 M.J. 399, 406 (C.A.A.F. 2003).  Applying stare decisis is "'the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.'"  Id. (quoting Payne v. Tennessee, 501 U.S. 808, 827 (1991)).  However, "*Stare decisis* is not an inexorable command; rather, it 'is a principle of policy and not a mechanical formula of adherence to the latest decision.'" Payne, 501 U.S. at 828 (citation omitted).

The gambler's defense was neither rooted in statute nor constitutional law, but was a court-made principle based wholly on public policy.  Where a judicial decision is based on public policy and that policy has changed, the doctrine of stare decisis does not prohibit this court from revisiting that

---

[4] We will address allegations that third party complicity negates a required element of a charged offense on a case-by-case basis and not with a sweeping defense based on public policy.  The government maintains the burden of proving each element beyond a reasonable doubt and the accused remains free to raise such facts that show his conduct does not satisfy a necessary element.

decision.  Cf. Vasquez v. Hillery, 474 U.S. 254, 266 (1986).[5]  We

therefore conclude that Wallace should be, and is now,

overruled.[6]

Partial Mental Responsibility Defense

We now turn to whether the military judge abused his

discretion when he did not inquire into and resolve alleged

factual inconsistencies that arose during the sentencing portion

of the trial.  During sentencing Falcon testified about his

gambling addiction and gambling practices, and SSgt Poole

testified that Falcon had been diagnosed as a pathological

gambler.

Falcon argues these statements are inconsistent with the

factual stipulation and his testimony during the providence

inquiry where he acknowledged he acted knowingly with the intent

to defraud.  Falcon argues this inconsistency required the

military judge to reopen the providence inquiry and determine

whether the possibility of a defense of partial mental

---

[5] The Supreme Court stated that precedent can be overruled if
"changes in society or in the law dictate that the values served
by *stare decisis* yield in favor of a greater objective."
Vasquez v. Hillery, 474 U.S. 254, 266 (1986).  The rise of
government sanctioned gambling reflects both a change in society
and a change in law.

[6] We do not address the ongoing validity of United States v.
Walter, 8 C.M.A. 50, 23 C.M.R. 274 (1957), and United States v.
Lenton, 8 C.M.A. 690, 25 C.M.R. 194 (1958), because the case
before us addresses legal gambling and those cases dealt with
illegal gambling.

responsibility existed.  In contrast, the Government argues the evidence raised only the "mere possibility" of a defense and there is no authority to support the assertion that a pathological gambling diagnosis could negate Falcon's specific intent to defraud the clubs.

"A guilty plea will be rejected only where the record of trial shows a substantial basis in law and fact for questioning the plea."  United States v. Harris, 61 M.J. 391, 398 (C.A.A.F. 2005).  We review de novo the military judge's legal conclusion that an appellant's pleas were provident.  Id.

A military judge is obligated to reopen the plea inquiry when a possible defense has been raised and not satisfactorily refuted because such a matter would be inconsistent with the accused's guilty plea.  United States v. Shaw, 64 M.J. 460, 462 (C.A.A.F. 2007); see also Article 45(a), UCMJ, 10 U.S.C. § 845 (2000).  However, the "mere possibility" of a defense, without more, does not give rise to this obligation.  Shaw, 64 M.J. at 462 (citation omitted).

In Harris we held that where a military judge had determined that the accused suffered from a severe mental defect or disease at the time of the offenses, and the accused was not aware that he suffered from such a disease at the time of the offense, the military judge had an obligation to inquire into the possible impact of those mental health issues on the

14

appellant's guilty pleas.  61 M.J. at 398.  In Shaw we held that
the appellant's reference to his diagnosis of bipolar disorder
without more, "at most raised only the 'mere possibility' of a
conflict with the plea."  64 M.J. at 464.

Initially, we disagree with Falcon's assertion that his
statements during sentencing were inconsistent with the
stipulation of facts and his earlier testimony.  At sentencing
in response to a question from defense counsel if he ever
thought about how he was going to pay for his next bet, Falcon
responded, "I -- actually -- never really thought about it,
ma'am, it just happened.  I mean -- I guess I was -- I guess
just write a check maybe get money to [gamble]."  That testimony
does not directly contradict his earlier testimony that he knew
he was writing worthless checks and that he intended to defraud
the clubs.  Similarly, the sentencing testimony that he had a
gambling addiction and had been diagnosed as a pathological
gambler does not directly contradict his earlier testimony that
he had a gambling problem and continued to gamble in order to
win back the money he lost and to feel the rush or high that
came from playing the slot machines.

Nor do we agree with Falcon's contention that this
testimony placed the military judge on notice to make inquiry
into the possibility of a defense of partial mental
responsibility.  In Shaw we held that the appellant's reference

15

to a bipolar disorder, without more, was not enough to require the military judge to make further inquiry.  64 M.J. at 464.  We made that holding even though we had previously recognized that a bipolar disorder may constitute a severe mental disease or defect.  See Harris, 61 M.J. at 397-98; United States v. Martin, 56 M.J. 97, 103 (C.A.A.F. 2001).  While Harris and Martin established that bipolar disorder "may exist with enough severity to raise a substantial question regarding the issue of the accused's mental responsibility[,] . . . the disorder does not negate responsibility in all cases."  Shaw, 64 M.J. at 463.

Falcon has provided no authority that a diagnosis of pathological gambling can constitute a defense of lack of mental responsibility or partial mental responsibility.  One of the factors the court looked at in Shaw was that there was no factual record before the court indicating how, if at all, Shaw's condition influenced his plea.  Id. at 462.  Based on the lack of any testimony that Falcon's diagnosis could have affected his ability to form the specific intent to defraud, and on the lack of any authority that such a diagnosis may provide a partial mental responsibility defense, we hold that the military judge did not abuse his discretion when he failed to reopen the providence inquiry.

16

## Conclusion

We hold the <u>Wallace</u> gambler's defense does not apply to Falcon's Article 123a, UCMJ, 10 U.S.C. § 923a (2000), conviction for worthless checks and that the military judge did not abuse his discretion in not inquiring into a possible partial mental responsibility defense.  Finally, we prospectively overrule <u>United States v. Wallace</u>, 15 C.M.A. 650, 36 C.M.R. 148 (1966), and the concept of a gambler's defense.  The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.