MITCHELL, Judge,
concurring dubitante:
I join the decision of Senior Judge Mark-steiner in its entirety. For the reasons set forth in that opinion, I am convinced beyond a reasonable doubt that the team of trial defense counsel provided the appellant with representation well above the required minimum standards and where their performance may have been below standards that the effect was not prejudicial. I write this separate opinion, concurring dubitante,[46] however, because I share Judge Peloquin’s concern, infra, that, in a court-martial referred as capital, servicemembers do not have the same institutional protections as those afforded criminal defendants facing the death penalty in a majority of our Nation’s jurisdictions.
The role of an appellate military judge is cabined by Congress and the Court of Appeals for the Armed Forces. See Article 66, UCMJ, 10 U.S.C. § 866; United States v. Nerad, 69 M.J. 188 (C.A.A.F.2010); United States v. Allbery, 44 M.J. 226, 227-31 (C.A.A.F.1996) (a service court of criminal appeals does not have discretion to depart from its superior court’s precedent). This is not an advisory opinion, as we have jurisdiction over the court-martial and are presented with a dispute between the parties as to the quality of the representation by those eoun-sel. See United States v. Chisholm, 59 M.J. 151, 152-53 (C.A.A.F.2003).
Trial defense counsel in this court-martial met all requirements imposed by statute. See Article 27, UCMJ,' 10 U.S.C. § 827; Rules for Courts-Martial 501, 502, 503, and 506. Trial defense counsel met the requirements imposed by regulation and were certified as competent by TJAG. Air Force Instruction 51-201, Administration of Military Justice, ¶ 5.2.2 (26 November 2003). Trial defense counsel also met all requirements of counsel as addressed in prior precedent established by our superior court. See United States v. Gray, 51 M.J. 1, 54 (C.A.A.F.1999); United States v. Murphy, 50 M.J. 4, 10 (C.A.A.F.1998); United States v. Loving, 41 M.J. 213, 300 (C.A.A.F.1994).
Our superior court has set forth that we are to “remain vigilant as to the quality of representation provided servicemembers in capital cases in the military justice system” on a ease-by-case basis. Gray, 51 M.J. at 54. The clear ease precedent does not allow for this court to establish minimum standards for attorney qualifications in death-penalty cases. Id. However, “[wjhere a judicial decision is based on public policy and that policy has changed, the doctrine of stare decisis does not prohibit this court from revisiting that decision.” United States v. Falcon, 65 M.J. 386, 390 (C.A.A.F.2008).
In evaluating when the imposition of an adjudged death penalty amounts to cruel and unusual punishment, the Supreme Court has emphasized, “By protecting even those convicted of heinous crimes, the Eight Amendment [47] reaffirms the duty of the government to respect the dignity of all persons.” Roper v. Simmons, 543 U.S. 551, 560, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005). Eighth Amendment analysis in a death penalty case requires evaluating “evolving standards of decency” as determined by “objective indicia of society’s standards, as expressed in legislative enactments and state practice with respect to executions.” Kennedy v. Louisiana, 554 U.S. 407, 420-21, 128 S.Ct. 2641, 171 *826 L.Ed.2d 525 (2008) (quoting Roper, 543 U.S. at 563, 125 S.Ct. 1183). “The Eighth Amendment’s protection of dignity reflects the Nation we have been, the Nation we are, and the Nation we aspire to be. This is to affirm that the Nation’s constant, unyielding purpose must be to transmit the Constitution so that its precepts and guarantees retain their meaning and force.” Hall v. Florida, 572 U.S. -, -, 134 S.Ct. 1986, 188 L.Ed.2d 1007 (2014).
I do not see why the implementation of the Fifth Amendment[48] right to due process and the Sixth Amendment[49] right “to have the Assistance of Counsel for his defence” should not also be influenced by recognition that protecting the rights of those accused of heinous crimes reaffirms our collective respect of the dignity of all persons.
As Judge Peloquin sets forth in his opinion, many of the state jurisdictions which have the death penalty as an authorized punishment include some requirement for minimum qualifications for defense counsel. The same is true within other federal death penalty statutory schemes. “Any alien unprivileged enemy belligerent” who is subject to trial by military commission when any of the charges is capital is entitled to representation “by at least one additional counsel who is learned in applicable law relating to capital cases and who, if necessary, may be a civilian” compensated by the Secretary of Defense. 10 U.S.C. §§ 948c, 949a(b)(2). A learned counsel is defined as “[a] military or civilian counsel, experienced in capital litigation, appointed under the provisions of 10 U.S.C. § 949a(2)(C)(ii).” Military Commissions Trial Judiciary Rules of Court, RC 4.2.e. (5 May 2014). To emphasize the importance of learned counsel, the Manual for Military Commissions prohibits the referral of a capital charge unless learned counsel has been appointed. Rules for Military Commissions 601(d)(2).
The current state of the law is that alien belligerents who are prosecuted under the Military Commissions Act of 2009, 10 U.S.C. §§ 948a, et seq., are entitled to an attorney experienced in capital litigation; yet the brave men and women of our own armed services who fought, captured, or guard those belligerents are not.
By statute, a defendant in the federal court system who is indicted for treason or another capital crime must promptly be assigned, upon the defendant’s request, two counsel “of whom at least 1 shall be learned in the law applicable to capital cases.” 18 U.S.C. § 3005. This was not always the case. The prior version of 18 U.S.C. § 3005 required capital defendants be represented only by “counsel learned in the law”:
The plain meaning of the phrase “learned in the law” refers to a person who has received a regular legal education, generally signified by admission to the bar. The plain meaning of the phrase does not imply any specialized death penalty experience. If Congress intended that counsel be learned in the law applicable to capital cases, it could have so stated, which it did when it amended [18 U.S.C. § 3005] in 1994.... [T]he 1994 amendment did not merely “clarify” the law but rather substantively changed it, creating a new requirement which previously had not existed.
United States v. McCullah, 76 F.3d 1087, 1098 (10th Cir.1996) (citations omitted).
In 1994, Congress decided that criminal defendants who were indicted for a capital offense were entitled to counsel who was more than simply “learned in the law”; Congress specifically enacted legislation to ensure that an accused who faced a possible execution by the State be provided with counsel who had specialized death penalty experience. As of this date, Congress has not provided similar statutory protections to servicemembers who have court-martial charges referred as capital — a disparity that causes me concern.
Congress has twice determined that an individual who faces a possible death penalty must be represented by counsel experienced in the unique challenges of capital defense. Yet, this same institutional protection is not provided to servicemembers. This reflects *827 where we have been as a Nation, and where we currently are; I am convinced that it does not accurately reflect where we as a Nation aspire to be.

. Jason J. Czarnezki, The Dubitante Opinion, 39 Akron L.Rev. 1 (2006), available at http:// digitalcommons.pace.edu/lawfaculty/905/.

. U.S. Const, amend. VIII.

. U.S. Const, amend. V.

. U.S. Const, amend. VI.